### MELODY v. MELODY.

PARTNERSHIP—ACCOUNTING.
  In suit to establish partnership and for accounting, evidence *held,* sufficient to entitle plaintiff to decree.

Appeal from Wayne; Collingwood (Charles B.), J., presiding. Submitted April 11, 1929. (Docket No. 14, Calendar No. 33,928.) Decided June 3, 1929.

Bill by Ida Thon Melody, administratrix of the estate of George O. Melody, against James B. Melody and others for an accounting of partnership funds. From a decree for defendants, plaintiff appeals. Reversed and accounting ordered.

*Frederic T. Harward* and *W. Leo Cahalan,* for plaintiff.

*S. Homer Ferguson* and *Frank B. Ferguson,* for defendants.

FELLOWS, J. There were three Melody brothers living in Wyandotte, Wayne county; they were John

T., James B., and George O. All three of them spent their lives from boyhood in a store which was run under the name of Melody Brothers, Melody Brothers Company, or Melody Brothers Department Store, these names being used somewhat interchangeably. Only James B. is alive. Plaintiff is the widow of George O. and administratrix of his estate. She brings this suit for an accounting, claiming that the three brothers were partners in the enterprise. John T. deceased since the bill was filed, and the case as to him was revived in the name of his son, who is administrator of his estate. The case presents only the one question of fact. No question of the rights of third parties being involved, holding out is unimportant, and, the case being solely *inter se,* the question for solution is: Was there a partnership in fact? Although on two occasions a subpœna was served on James, the only surviving brother, and his attorney in the utmost of good faith made every effort humanly possible to procure his attendance, he did not appear in court until brought in on a bench warrant, and then gave testimony in conflict with practically every other witness in the case. We place little, if any, credence in his testimony. Although the trial judge reached the conclusion that plaintiff had not sustained the burden of proof, it is patent that he, too, was not at all impressed by the testimony of James.

We are satisfied from a careful perusal of this record that from the spring of 1912, if not before, George was a member of the firm of Melody Brothers. It is established, we think, beyond peradventure that along in March of that year there was what was termed a reorganization of the firm and two old employees were admitted to membership. If George had not become a member before, he cer-

tainly did become such at this time. There was a meeting, and we do not understand anyone denies that fact. Figures were made showing the interest of each one in the business, and they were in the handwriting of John, who was then very active in the business, and the paper and figures then made by him were introduced in evidence. This paper shows the amount of stock on hand, the amount of bills receivable, the liabilities and computations made, followed by this resumé:

| | |
|---|---|
| "James | 17,200.00 |
| Jno. | 17,200.00 |
| Geo. | 2,000.00 |
| Jno. Bea. | 1,000.00 |
| Blanch | 300.00" |

It is admitted that "Jno. Bea." is defendant John Beaubien and that Blanch is defendant Blanche Eilberg Schweiss. From that time on annually after the February inventory, James, John, and George Melody and John Beaubien and Mrs. Schweiss each received checks varying in amount. James testifies these were bonus checks, but the local paper on March 15, 1912, upon information furnished its editor by John under a heading "Melody Store takes in two faithful employees," said:

"As reorganized, the firm will include James B. Melody, who will continue as buyer and financial man; John T. Melody, in charge of the ready-to-wear department and advertising; George O. Melody, carpets, wall paper and shoe department; John Beaubien, window dresser and clothing department; Miss Eilberg, dry goods saleslady and bookkeeper."

The stationery of Melody Brothers named John and James and George as members of the firm; their income returns until George's death named him as

a partner. In such few law suits as the firm started, he was named as a partner, and, where ancillary proceedings in garnishment were had, it was sworn that he was a partner. There is testimony that George's interest of $2,000 in the business was protected by bonds in that amount held by the brothers, and it is not seriously disputed that for some time after his death the interest on their bonds was paid his widow semi-annually. None of the brothers drew out as their weekly allowance anywhere nearly the amount the services of a good clerk would command. For around 35 or 40 years these three brothers worked in this store together, and it became one of the leading stores in Wyandotte. Each one had certain duties and certain departments which he looked after, and doubtless John and James were more thrifty than was George, and both probably had better health than he had, but the figures set down by John when the reorganization took place, and which were undoubtedly the figures then agreed upon, took ample account of this. George's interest was but a meagre $2,000, but we are satisfied that all three brothers, from at least March, 1912, understood he had a partnership interest in the business to that amount.

The decree dismissing plaintiff's bill will be re-versed, and one will be here entered in consonance herewith. The decree will also provide for a remand for the taking of an account. Plaintiff will have costs of both courts.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.